Present:  All the Justices

DAVID MICHAEL SCATES

v.  Record No. 010091      OPINION BY JUSTICE DONALD W. LEMONS
                                         November 2, 2001
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the trial court erred in admitting evidence of other crimes committed by the defendant in this prosecution for a particular burglary and larceny.

I. Facts and Proceedings Below

David Michael Scates ("Scates") was indicted for feloniously and unlawfully taking, stealing, and carrying away United States currency and/or property, having a value of $200.00 or more, belonging to Susan Shepard ("Shepard"), in violation of Code § 18.2-95.  Scates was also indicted for feloniously and unlawfully breaking and entering in the daytime, the dwelling house of Shepard, with the intent to commit a felony therein, in violation of Code § 18.2-91. Scates was tried and convicted for both offenses by a jury in the Circuit Court for the City of Richmond.  The jury fixed punishment at three years imprisonment on the grand larceny offense and six years on the breaking and entering offense, and the trial court imposed both sentences.

We state the evidence at trial in the light most favorable to the Commonwealth, the prevailing party below. Roach v. Commonwealth, 251 Va. 324, 329, 468 S.E.2d 98, 101, cert. denied, 519 U.S. 951 (1996). Maggie Galliot ("Galliot"), Shepard's roommate, testified that on March 2, 1998, she was at home alone in her bedroom. She left the apartment door unlocked because she was expecting her boyfriend and he did not have a key.

Galliot heard a knock on the door and did not answer it because she thought it was her boyfriend, who would usually knock and then enter the apartment. She heard someone walking around the apartment and realized it was not her boyfriend when she heard the person enter Shepard's room. Galliot heard the door to the bathroom open and then heard the person leave the apartment. She never saw the intruder. Shepard arrived home later that day and Galliot informed her of what happened. At that time, neither woman noticed that anything was missing from the apartment.

Police subsequently contacted Shepard because they believed they had recovered a ring she owned. Shepard later identified her ring and other pieces of jewelry, which were found during a police search of a room belonging to Scates.

Police also found a number of credit cards during their search of Scates' room. Immediately prior to trial, the

2

parties discussed with the trial court the admissibility of a statement made by Scates to Detective Robert Click ("Detective Click"), "that in order to go into homes, [Scates] would take credit cards, [and] jam them into a door." The Commonwealth maintained that this testimony was admissible because the credit cards were "an instrument of [Scates'] scheme of breaking into homes."

Scates argued that the statement regarding the use of credit cards to gain access to homes was irrelevant because no forced entry occurred in this case. Additionally, Scates argued that such evidence would be highly prejudicial. In a pre-trial ruling the trial court stated, "I will not allow evidence about other crimes."

Despite the pre-trial ruling, the Commonwealth was permitted, over the defendant's objection, to elicit from Detective Click testimony that Scates told him, "that in order to go into homes, he would take the credit cards, jam them into a door. . . [u]se the credit cards, jam [one] into the lock of the door, and wiggle it around until the door itself came open." On cross-examination, Detective Click acknowledged that Scates' statement about using the credit cards for entry into homes "didn't pertain to this case, the burglary, alleged burglary at Ms. Shepard's home . . . ."

Additionally, at trial the Commonwealth was permitted, over the defendant's objection, to elicit testimony from Sergeant Burton Walker about the condition of certain laminated cards found in Scates' room. Walker testified, "[m]ost of them are chewed up on the end. On each there are gashes and gouges. Some of them are cracked. Most of the laminated cards appear to be bent. This driver's license is separated and broken at the end."

The Court of Appeals denied Scates' petition for appeal, stating that, "Click's testimony concerning appellant's admitted use of the credit cards addressed appellant's general scheme of breaking into and entering residences, an offense with which appellant was charged in the present case. Accordingly, the trial judge did not abuse her discretion in admitting the evidence."

## II. Analysis

Scates argues on appeal that the trial court erred in admitting the detective's statement about Scates' use of credit cards to break into homes and in admitting evidence concerning the condition of cards found in his room. Scates asserts that the Commonwealth failed to demonstrate the relevance of the evidence to the offenses charged; therefore, he contends that the evidence served only to demonstrate his

4

propensity to commit the type of crimes for which he stood charged and should not have been admitted.

We have previously stated:

> The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. It is also well established that evidence of other offenses should be excluded if offered merely for the purpose of showing that the accused was likely to commit the crime charged in the indictment. However, the exceptions to the general rule are equally as well established. Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part. Frequently it is impossible to give a connected statement showing the crime charged without incidental reference to such contemporaneous and similar crimes and where there is only such incidental disclosure of other offenses.

Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). Additionally, admission of evidence of other crimes is subject to the further requirement that the probative value of the evidence must outweigh any incidental

5

prejudice to the defendant. Guill v. Commonwealth, 255 Va. 134, 139, 495 S.E.2d 489, 491-92 (1998).

Although we have recognized numerous circumstances where "other crimes" evidence is admissible, we confine our analysis in this case to the reasons offered by the prosecutor at trial and the additional justification utilized by the Court of Appeals. At trial, the prosecutor argued that the credit card evidence showed "an instrument of [Scates'] scheme of breaking into homes." The Court of Appeals agreed with the Commonwealth and added a separate analytical basis for the admissibility of this evidence, quoting Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984), holding that, "[a]n accused is not entitled 'to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial.' " Scates v. Commonwealth, Rec. No. 1115-00-2, November 3, 2000, Slip Op. at 6. The trial court and the Court of Appeals erred in permitting the introduction of this evidence for either reason.

We have previously held that "evidence of similar acts is admissible to show a common scheme, design, or plan where there is 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual

6

manifestations.' " McWhorter v. Commonwealth, 191 Va. 857, 870-71, 63 S.E.2d 20, 26 (1951)(citations omitted). See also Satcher v. Commonwealth, 244 Va. 220, 230-31, 421 S.E.2d 821, 827-28 (1992), cert. denied, 507 U.S. 933 (1993). Here, there is no "concurrence of common features" that proves a "common scheme, design, or plan." The only evidence of entry into the apartment is that the door was unlocked and the person who unlawfully entered did so by using the door knob. There is no evidence that access to this apartment was gained by utilizing a credit card.

The Court of Appeals' additional justification for the admission of the credit card evidence cites our opinion in Scott. The Scott case involved a course of criminal conduct which was continuous and interwoven consisting of a series of related crimes. In Scott, the defendant argued that evidence of transporting the victim to Tennessee and raping her there was "other crimes" evidence inadmissible in his Virginia prosecution for abduction with intent to defile. As we noted, "[e]vidence of such connected criminal conduct is often relevant to show motive, method, and intent." Id. at 527, 323 S.E.2d at 577. When the course of criminal conduct is continuous and interwoven, "[t]he fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as

those which preceded it; even though they may show the defendant guilty of other offenses." Id. at 526-27, 323 S.E.2d at 577. However, continuous and interwoven conduct is not present in the case before us.

Finally, contrary to the Commonwealth's assertion, Detective Click's testimony combined with Sergeant Walker's testimony clearly referenced other crimes. Scates' statement that, "in order to go into homes, he would take the credit cards [and] jam them into a door" did not refer to a particular offense, but suggested multiple other offenses. Evidence of mutilated credit cards further supported the statement. Under the facts of this case, the evidence was not in support of an asserted "common scheme, design, or plan" or "continuous and interwoven criminal conduct."

### III. Conclusion

For the foregoing reasons we hold that the Court of Appeals and the trial court erred in approving the admission of evidence of other crimes in this case. The order of the Court of Appeals affirming Scates' convictions will be reversed. The case will be remanded to the Court of Appeals with direction that it be remanded to the circuit court for a new trial if the Commonwealth be so advised.

Reversed and remanded.