*418 BENTON, J.,
dissenting.
I dissent from the majority opinion because I believe that the circuit judge did not have the discretion to join the offenses for a single trial. I also believe that in reviewing this appeal, we are limited to considering the prosecutor’s pretrial proffer made to the circuit judge in support of the motion for joinder and, thus, we cannot consider the evidence later introduced at trial in determining the propriety of the pretrial decision to join the offenses for trial. Even so, neither the proffer nor the evidence established a sufficient basis to find a common scheme or plan underlying the charges. The circuit judge’s error was prejudicial to Otis Scott, and it requires the granting of new, separate trials.
When arguing the motion for joinder, the prosecutor proffered the following:
The first victim—alleged victim is Michelle Bingham.... The second victim.... It’s Florentina Lizan. That’s March 16th of 2003. The third victim is Kay Holloway. That is March 23rd of 2003. The fourth victim is Jeff Ratliff, 4-27-2003. The fifth victim is Holly Narducci, and that’s May 2nd of 2003. The sixth victim is Aderonte Aderonmu, which is May 15th of 2003. The seventh alleged victim is Samuel Owens on May 31, 2003. The eighth victim is Jean Becker on May 31, 2003; and the ninth victim is Ian Goodwin; and that is June 7, 2003.
... [T]he similarities between these nine separate victims are this: The times of the offense for each of those occurred between 10:00 p.m. and 12:30 a.m.
In each [of the] separate nine incidents, the victim was alone. In each ... the attacker was alone as he approached the victim.
In eight of the nine separate incidents, each victim alleged—stated that a gun was allegedly used. The ninth victim, Jean Becker, stated that a hard metal object was used. She could not see if it was a gun or not.
In eight of the nine separate incidents, each victim was approached as they approached their residence[s]____The *419 first incident, Michelle Bingaman—she had just parked at a spot in front of her residence after driving up. The second victim, Miss Lizan, was outside her front door after exiting her vehicle. The third victim, Kay Holloway, was outside her house while getting out of her car. Mr. Ratliff was in the driveway of a residence. Holly Narduci was inside her garage of her residence. Miss Aderonmu was in the street in front of her residence just after parking her vehicle. Samuel Owens was inside ... a garage at a residence. Miss Becker was entering her garage while exiting her car as she had just pulled up, and Ian Goodwin was in the driveway of a residence—was in the driver’s seat of a vehicle with the door open.
In eight of the nine incidents, personal property was demanded. In six—seven of the incidents either there was bodily injury threatened or there was actually bodily injury____In all nine of them allegedly personal property was taken. In five of the incidents the assailant asked the victims for their PIN numbers to their credit cards and/or ATM cards. In each of the incidents, they were all adult victims. In each of the incidents, they were all adult suspects. In each of the incidents it was an African-American; and, again, in each it was a male.
This proffered version of the facts was all that the circuit judge had available to consider when deciding the prosecutor’s pretrial joinder motion and, thus, this proffer is all that we should consider when determining whether the judge erred in making that decision. See Spence v. Commonwealth, 12 Va.App. 1040, 1045, 407 S.E.2d 916, 918-19 (1991) (explaining that in determining whether to sever charges, the circuit judge “should make the determination based upon the situation as it appears before trial”).
In support of the joinder motion, the prosecutor argued that the proffered facts indicated the common plan or scheme was as follows:
The scheme was to rob people as they were going into their residence—either getting out of their vehicle in their driveway or entering the residence late at night in a residential *420 area when they were alone and with a gun and demanding property and threatening bodily harm or committing bodily harm in most of the cases; and so, yes, I think that’s a common scheme tying all these cases together—and in each one approaching on foot. That is distinctive as well, and then seen fleeing in a vehicle—approaching on foot and then seen fleeing in a vehicle.
In response, Scott’s attorney argued that those circumstances were irrelevant to the issue of joinder and pertained only to “whether the evidence would be admissible in a single trial to prove identity.”
The circuit judge applied a “balancing” test and granted the prosecutor’s motion. He ruled as follows:
In weighing all of the various factors that we have considered during our discussions today on this motion, and in balancing all of the prejudice or the possible prejudice to the defendant and the other factors that we’ve talked about, including the fact that several lay witnesses perhaps ostensibly might be required to testify in multiple separate trials if they were to be held separately, the standard by which that evidence is judged, the likelihood that at least some of those individuals may be in a position to be permitted to offer testimony as to identity in those cases in which identity would be an issue, the substantial similarities in terms of the modus operandi in these offenses, the method by which they were carried out, the similarity in the selection of the victims, the type of victim, the location that was selected for the offenses, the offense itself that was committed, what was taken, what was requested in addition to the method and means by which the crimes were carried out, I think all of that suggest that the Commonwealth’s motion should be granted.
The judge’s decision was plainly wrong.
The governing principles are straight-forward. The circuit judge “has limited discretion to order an accused to be tried for more than one offense at the same time.” Godwin v. Commonwealth, 6 Va.App. 118, 121, 367 S.E.2d 520, 521 *421 (1988). The judge’s discretion is prescribed in Rule 3A:10(c): “The court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth’s attorney consent thereto.” By its plain terms, Rule 3A:6(b) provides for the joinder of offenses in the absence of consent only where the offenses are “based on” (1) “the same act or transaction,” (2) “two or more acts or transactions that are connected,” or (3) “two or more acts or transactions that ... constitute parts of a common scheme or plan.”
As the majority notes, the Commonwealth argues only that the circuit judge could have reasonably inferred “that the acts constituted parts of a common scheme or plan.” I disagree with the majority’s conclusion that the charged crimes “were related by virtue of a common scheme.”
We have been clear about the required standard in these cases.
A common scheme or plan is present only if the “relationship among offenses ... depend[s] upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not obtainable by the commission of any of the individual offenses.”
Spence, 12 Va.App. at 1044, 407 S.E.2d at 918 (quoting Godwin, 6 Va.App. at 122, 367 S.E.2d at 522); see also Yellardy v. Commonwealth, 38 Va.App. 19, 25, 561 S.E.2d 739, 742 (2002) (applying Spence’s definition of a common scheme or plan). In a similar vein, the Supreme Court has held that similar acts may tend to show a common scheme or plan only “where there is ‘such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations’ ” Scates v. Commonwealth, 262 Va. 757, 762, 553 S.E.2d 756, 759 (2001) (emphasis added, citation omitted). These cases recognize a distinction between mere similarity of crimes and a “common scheme or plan.” Separate crimes of the same type do not *422 automatically translate to crimes of a common scheme or plan. See Boyd v. Commonwealth, 213 Va. 52, 53, 189 S.E.2d 359, 360 (1972) (reversing a conviction because the three heroin sales were not part of a general scheme); Spence, 12 Va.App. at 1044, 407 S.E.2d at 918 (holding that no evidence of the four drug sale charges tied the sales together); see also Scates, 262 Va. at 760-62, 553 S.E.2d at 758-59 (reversing the conviction because the defendant’s admission that he “jammed” credit cards into doors in order to enter other homes was not admissible as demonstrative of a common “scheme of breaking into homes”).
The nine robberies charged against Scott occurred over the span of four months. Fitting with the definition of robbery, the nine acts involved violence or the threat of violence. Although each victim was alone in a residential neighborhood in the City of Virginia Beach (the most populous city in Virginia and one of the largest cities in land area in the continental United States), this fact establishes no relationship among the offenses that is relevant to a common scheme or plan. While it is true that on each occasion the robber demanded personal property, this is the hallmark of an ordinary robbery. Despite sharing some similarities, the robberies were not shown to have a relationship indicative of a common plan or scheme. Neither the Commonwealth’s proffer nor the full record revealed “a plan that ties the offenses together ... [or] demonstrates that the objective of each offense was to contribute to the achievement of a goal not obtainable by the commission of any of the individual offenses.” Godwin, 6 Va.App. at 122, 367 S.E.2d at 522.
Rule 3A:10(c) requires more than proof of propensity to commit crime. Spence, 12 Va.App. at 1045, 407 S.E.2d at 918. Merely to posit that the robberies had striking similarities is insufficient to show that the separate crimes grew from a common scheme or even were related. Indeed, one robbery is not connected to another merely because they occurred in a residential area; robberies are not limited to commercial districts. Muggings are not uncommon occurrences and often involve threats of violence and guns. Likewise, it is not *423 unusual for a robber to demand money or credit cards. The fact that a lone robber chose a lone victim is hardly surprising. Possibly the only peculiar fact about some of these robberies is that the robber demanded personal identification numbers for the stolen cards, but, because it is common knowledge that such a number is necessary to withdraw cash from an automated machine or using a credit card, this fact does not adequately connect even those five robberies. These proffered facts established no “general plan” or acts that were “naturally ... the individual manifestations” of a general plan or scheme. Scates, 262 Va. at 762, 553 S.E.2d at 759. Simply put, “[t]here is no evidence of a plan tying [the offenses] together or showing that each offense was intended to assist in accomplishing a goal other than that achieved by each individual offense.” Spence, 12 Va.App. at 1044-45, 407 S.E.2d at 918.
In addition, the judge’s ruling that the similarities of the crimes was a sufficient basis to grant the joinder motion invoked an erroneous legal standard and, therefore, was an abuse of discretion. An abuse of discretion is “an adjudicator’s failure to exercise sound, reasonable, and legal decision-making.” Black’s Law Dictionary 11 (8th ed. 2004). Thus, a judge errs, “as a matter of law” when the judge “use[s] an improper legal standard in exercising [a] discretionary function.” Thomas v. Commonwealth, 263 Va. 216, 233, 559 S.E.2d 652, 661 (2002); see also Shooltz v. Shooltz, 27 Va.App. 264, 271, 498 S.E.2d 437, 441 (1998) (holding that a trial judge by definition abuses his discretion when the judge makes an error of law). Here, the circuit judge indicated he was swayed by the inconvenience of requiring witnesses “to testify in multiple separate trials” and “the similarities in terms of the modus operandi of these offenses.” The judge’s consideration of these factors of convenience and identity caused the judge to misapply the law in granting the Commonwealth’s motion. The provisions of Rule 3A:10 and Rule 3A:6 do not pertain to the convenience of witnesses. Moreover, the circuit judge relied on the similarities between the crimes but did not explicitly find the existence of circumstances indicative of a *424 common plan or scheme. While it is possible the judge concluded “that, since the offenses were factually similar, they were committed by the same person[ ] as part of a plan,” such a conclusion “is speculative.” Godwin, 6 Va.App. at 123, 367 S.E.2d at 522. By definition, this error was an abuse of his discretion. See Shooltz, 27 Va.App. at 271, 498 S.E.2d at 437.
Furthermore, I do not believe that the evidence of the other crimes would have been admissible to prove identity even if the charges had been tried separately.
“The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times ... is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged.”
Donahue v. Commonwealth, 225 Va. 145, 155, 300 S.E.2d 768, 773 (1983) (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)). This rule exists because “ ‘evidence implicating an accused in other crimes ... may confuse the issues being tried and cause undue prejudice to the defendant.’ ” Commonwealth v. Minor, 267 Va. 166, 172, 591 S.E.2d 61, 65 (2004) (quoting Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998)). Indeed, as we noted in Spence, “[t]he introduction of evidence of factually similar offenses, even those occurring within hours of one another, has been held to be error.” 12 Va.App. at 1042, 407 S.E.2d at 917 (citing Boyd, 213 Va. 52, 189 S.E.2d 359); see also Godwin, 6 Va.App. at 124-25, 367 S.E.2d at 523 (holding that “without the showing of an unusual or distinctive modus operands evidence of one of the robberies would not have been admissible in the trial of the other”); Henderson v. Commonwealth, 5 Va.App. 125, 360 S.E.2d 876 (1987) (reversing the conviction because the evidence of the other robberies was inadmissible to prove identity); Johnson v. Commonwealth, 3 Va.App. 444, 350 S.E.2d 673 (1986) (holding that evidence of the defendant’s previous burglary conviction was not allowed to prove identity for the current burglary charge despite the use of the same lock-picking tool).
*425 Proof of other crimes may be admissible in order to prove identity if the crimes share the same modus operandi. Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990). However, “without a showing of an unusual or distinctive modus operandi, evidence of one ... [robbery is] not ... admissible in the trial of ... [an]other.” Godwin, 6 Va.App. at 124-25, 367 S.E.2d at 523. A modus operandi exists where “the other crimes bear ‘a singular strong resemblance to the pattern of the offense charged.’ ” Spencer, 240 Va. at 90, 393 S.E.2d at 616 (quoting United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir.1989)).
The robberies at issue do not “bear a singular strong resemblance” to each other and thus do not share a modus operandi. As in Godwin, “although factually similar, [the offenses] were not so unusual or distinctive as to identify the person who committed ... them.” 6 Va.App. at 125, 367 S.E.2d at 523. Proof of the nine offenses in a single trial merely tended to improperly show that Scott “has the propensity to commit the crime[,] and this inference has been held to be error because it reverses his presumption of innocence.” Spence, 12 Va.App. at 1045, 407 S.E.2d at 918 (reversing a conviction because the trial judge refused to sever four charges for distribution of cocaine).
For these reasons, I would hold that the trial judge abused his discretion in granting the motion to join the offenses for trial. I would reverse the convictions and remand for new, separate trials.