PRESENT: Hassell, C.J., Koontz, Kinser, Lemons, Agee, and
         Goodwyn, JJ., and Stephenson, S.J.

WILLIAM A. PRYOR, JR.

                                        OPINION BY
v.  Record No. 071744   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        June 6, 2008
COMMONWEALTH OF VIRGINIA

              FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the trial court erred
in permitting the jury to consider a videotaped recording of a
drug transaction as evidence pertaining to an earlier
transaction after the court struck the evidence of the later
transaction.

                                  I

     William A. Pryor, Jr. was charged with two counts of
distribution of cocaine.  The offenses allegedly occurred on
June 16, 2003, and July 24, 2003, and videotaped recordings were
made of both transactions.  The two offenses were tried
together, and the recordings of both transactions were displayed
for the jury and admitted into evidence during the trial without
objection from Pryor.  At the conclusion of the Commonwealth's
evidence, the trial court granted Pryor's motion to strike the
evidence regarding the July transaction.  Pryor did not present
evidence.  When the jury retired to deliberate, the trial court,
over Pryor's objection, allowed the jury to consider the
videotaped recording of the July transaction "only as it may be

relevant to the June 16, [20]03 charge." The jury found Pryor guilty of distribution of cocaine on June 16, 2003, and the trial court entered judgment on the verdict.

The Court of Appeals affirmed Pryor's conviction. Pryor v. Commonwealth, 50 Va. App. 42, 646 S.E.2d 21 (2007). We awarded Pryor this appeal.

## II

Greene County Deputy Sheriff Joseph Hogsten arranged to have a confidential informant purchase $100 worth of cocaine from Pryor. On June 16, 2003, the informant called Pryor to arrange a transaction and then notified Deputy Hogsten. Deputy Hogsten went to the informant's residence and searched her person to confirm that she did not have any narcotics in her possession. Deputy Hogsten then outfitted the informant with an audio and video transmitting device and gave her instructions and $100 for the purchase of cocaine from Pryor.

Deputy Hogsten waited in his vehicle approximately 75 to 100 yards away from the informant's residence in order to observe the transaction. Deputy Hogsten saw a white Toyota Camry pass within 20 feet of him as it approached the informant's residence. He saw two black individuals inside the vehicle, but he could not determine whether they were male or female. Deputy Hogsten viewed the transaction "live" on the screen of a video camera and recorder ("camcorder") that

2

received the broadcast from the transmitting device attached to the informant. After the Camry left the area, Deputy Hogsten went to the informant's residence, searched her, and retrieved the cocaine that she had purchased from Pryor. The informant was unable to recall which occupant of the vehicle had actually handed her the drugs.

Deputy Hogsten later arranged to have the informant purchase another $100 worth of cocaine from Pryor. On July 24, 2003, Deputy Hogsten again went to the informant's residence, searched her person for narcotics, outfitted her with an audio and video transmitting device, and gave her $100 for the purchase. On this occasion, the deputy went to a vacant adjacent residence in order to monitor the transaction "live" on the camcorder screen. About two hours later, Deputy Hogsten saw the same white Toyota Camry, with someone who "appeared to be" Pryor and another black male inside, arrive at the informant's residence. After the transaction was completed, Deputy Hogsten recovered the cocaine from the informant. As before, the informant was not able to recall which occupant of the vehicle had actually handed her the drugs.

The videotaped recordings of both transactions were played for the jury and admitted into evidence without objection at that time from Pryor. As previously noted, at the conclusion of the Commonwealth's case-in-chief, Pryor moved to strike the July

3

24 charge. Thereupon, the trial court informed the jury that "[t]he Court has struck the evidence as to . . . the July 24 charge." Pryor elected not to present evidence on his behalf. After the trial court had instructed the jury and after closing arguments, Pryor objected to the delivery to the jury room of the videotaped recording of the July transaction. He argued that the recording of the July transaction was irrelevant to the charge of June 16 and that, even if relevant, its prejudicial effect outweighed its probative value. The trial court overruled his objection. During deliberations, the jury specifically asked whether it was permitted to view the recording of the July transaction, and the court replied, "Yes, but only as it may be relevant to the June 16, [20]03 charge. It may not be considered for the July 24, [20]03 charge, which has been struck and is not before you."

### III

Pryor contends that the trial court erred in permitting the jury to consider the videotaped recording of the July transaction because the evidence regarding the July 24 charge had been stricken.[*] The effect of sustaining a motion to strike the charge is to eliminate all of the evidence submitted on that offense from consideration by a jury. See Anderson v.

4

Clinchfield R. Co., 171 Va. 87, 89, 198 S.E. 478, 479 (1938);

see also 1 Virginia Model Jury Instructions--Criminal,

Instruction 2.360 (stricken matter must be disregarded).

In the present case, at the conclusion of the

Commonwealth's case-in-chief, the trial court granted Pryor's

motion to strike the evidence regarding the charge of

distribution of cocaine on July 24, 2003.  However, there had

been no determination whether the videotaped recording of the

July transaction was properly in evidence for the offense of

June 16.  It was only when the recording of the July transaction

itself was being delivered to the jury for their deliberations

that Pryor made his objection concerning admissibility.  The

Commonwealth argued that the recording of the July transaction

was admissible for the charge relating to the June transaction

because it tended to prove the identity of the defendant in the

June transaction.  When asked about the relevancy of the

recording of the July transaction to the charge of the June

transaction, the Commonwealth responded:

> Well, the officer testified that he went
> through the same setup and there's a camera.
> We would submit that it's corroborative of his
> being at her residence which is an issue, I
> think the way the case was argued.  Whether it
> was actually him or not, the testimony was that
> he was---the evidence from that videotape was

---

* Pryor has assigned numerous errors, but we find assignment
of error 1 dispositive.  In light of our holding, we need not
consider Pryor's other assignments of error.

that he was there another time in a similar circumstance, so we think it corroborates the fact that the first incident took place and the defendant was a participant in that.

Assuming without deciding that the recording of the July transaction was relevant to the June offense, we hold that its probative value was greatly outweighed by its prejudicial effect. As we have repeatedly stated:

> The standard governing the admission of evidence of other crimes in the guilt phase of a criminal trial is well established. Evidence that shows or tends to show that a defendant has committed a prior crime is generally inadmissible to prove the crime charged. Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998); Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). There are several exceptions to this general rule. One exception is that evidence of other crimes is admissible to prove a perpetrator's identity when certain requirements are met.

Turner v. Commonwealth, 259 Va. 645, 651, 529 S.E. 2d 787, 790-91 (2000). "Additionally, admission of evidence of other crimes is subject to the further requirement that the probative value of the evidence must outweigh any incidental prejudice to the defendant." Scates v. Commonwealth, 262 Va. 757, 761, 553 S.E.2d 756, 759 (2001); accord Guill, 255 Va. at 139, 495 S.E.2d at 491-92.

Of significance to the evaluation of the evidence in the present case is the Commonwealth's observation that, "[w]hether it was actually him or not, . . . the evidence from that

6

videotape was that he was there another time in a similar circumstance."  Even the Commonwealth had doubts about the value of the recording of the July 24 transaction as it pertained to Pryor's identity regarding the June 16 transaction.  Whatever slim reed of corroboration this evidence might provide on the disputed issue of the perpetrator's identity, this claimed probative value most certainly was not sufficient to meet the requirement for admissibility of other-crimes proof; i.e., that its probative value must outweigh its prejudicial impact.  See Scates, 262 Va. at 761, 553 S.E.2d at 759.

IV

Accordingly, we will reverse the judgment of the Court of Appeals affirming Pryor's conviction and will remand the case to the Court of Appeals with direction that the case be remanded to the circuit court for a new trial if the Commonwealth be so advised.

Reversed and remanded.

7