## CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

William David Tucker

November 1, 2010

Case No. CR10-1213

BY JUDGE CLIFFORD R. WECKSTEIN

The defendant, William David Tucker, has moved to suppress evidence seized when police officers executed a search warrant at his home. After hearing and considering the evidence and argument of counsel, the court will enter an order granting the motion to suppress. The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const., amend. IV.

> "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

*Kyllo v. United States*, 533 U.S. 27, 31 (2001) (opinion of the Court by Scalia, J.) quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961). "It makes all the difference in the world whether one recognizes the central fact about the Fourth Amendment, namely, that it was a safeguard against

recurrence of abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution, or one thinks of it as merely a requirement for a piece of paper." *United States v. Rabinowitz*, 339 U.S. 56, 69 (1950) (Frankfurter, J., dissenting).

"Generally, where law enforcement officers illegally search private premises or seize property without probable cause, the illegally seized evidence will be excluded." *Anualda v. Commonwealth*, 44 Va. App. 764, 607 S.E.2d 749 (2005) (*en banc*) (internal quotations, citations, and ellipses omitted). The "good faith exception to the exclusionary rule" may keep the evidence from being excluded, however, if the police officer who executed the search warrant had an objectively reasonable (though erroneous) belief that the magistrate had probable cause to issue the search warrant. The phrase "good faith exception to the exclusionary rule" or "good faith exception" has become something of a term of art. *See, e.g., Derr v. Commonwealth*, 242 Va. 413, 422, 410 S.E.2d 662 (1991). The exception itself was articulated by the Supreme Court in *United States v. Leon*, 486 U.S. 897 (1984). Every case, of course, turns on its own unique facts, and there are "recognized situations in which the good faith exception will not be applied." *Id.*

## Facts

Factual statements in this opinion are, unless context indicates otherwise, the court's findings of fact. I state the facts, and the inferences to be drawn from them, in the light most favorable to the non-moving party, the Commonwealth. The evidence was presented at a suppression hearing at which the only witness was the detective on whose affidavit the search warrant was issued. The search warrant and affidavit were introduced through his testimony.

A police detective submitted an affidavit, requesting a warrant to search Tucker's home and person "in relation to an offense substantially described as follows: In violation of Section 18.2-248 Code of Virginia (1950 as amended): Possession of Cocaine with Intent to Distribute, which is a Felony in Virginia."

One might fairly ask what in the affidavit supports the detective's conclusion that the crime to be investigated is possession of cocaine with intent to distribute, as opposed to possession of distribution of any other narcotic or controlled substance. The Commonwealth is entitled to have the inferences drawn in its favor. The statute cited by the detective, Va. Code § 18.2-248, covers distribution and possession of all scheduled controlled substances and drugs.

In the affidavit, the detective told the magistrate that:

He was an experienced police officer who had conducted narcotics-related investigations in Roanoke and Richmond, leading to arrests and to seizures of numerous types of narcotics.

On the preceding day, he had conducted a "trash pull," searching through the contents of the trash can that was at the curb adjacent to Tucker's home at 4025 Michigan Avenue, N.W., in the City of Roanoke. In the trash, the detective found mail addressed to Tucker at the Michigan Avenue address; and "located several baggies that were missing the corners on them."

Five days earlier, "your affiant received an Intel report from an anonymous source" that Tucker "was dealing illegal narcotics" from his residence at 4025 Michigan Avenue.

More than 12 years earlier, Tucker was convicted of possessing crack cocaine with intent to distribute, and served a sentence in federal prison.

Some 23 months earlier, police records showed, a search warrant was executed at the defendant's Michigan Avenue residence, and cocaine was seized. "The report show[ed] that William David Tucker admitted to selling illegal narcotics."

In his training and experience, he had learned that drug dealers often keep substantial quantities of drugs at their homes.

The affidavit did not state that the detective found any contraband, drug residue, or anything else that he associated with the sale of controlled substances or other criminal activity. He testified that, other than the baggies that were missing corners, he found none of those things.

The affidavit did not say how many corner-missing baggies the detective found. He testified that he could not remember how many baggies he saw in the garbage but that the number was between five and ten. He did not preserve them as evidence.

The "Intel report from an anonymous source," the detective testified, was a call to the Roanoke area Crime Line. Although the affidavit told the magistrate that the detective received this "Intel report" on a particular date, the magistrate was not told (nor was the court) when the anonymous tip was made, that is, when Crime Line received the call. The magistrate was not told that the "Intel report from an anonymous source" was a recorded message left on Crime Line. In order to have a complete record, the court takes judicial notice of the explanation of the Roanoke Valley Crime Line, Inc., at http://www.roanokecountyva.gov/Departments/Police/Crime Prevention/CrimeLine.htm. By this reference to a reliable and easily ascertainable source, the court takes judicial notice of what Crime Line is.

This description of Crime Line is also a matter of common knowledge — therefore also subject to judicial notice — illustrated by the fact that no one asked the detective to explain what he meant when he talked about Crime Line.

At the suppression hearing, the detective testified that the defendant was not prosecuted in 2007 when, as the affidavit says, the defendant admitted to selling illegal narcotics. (From talking with another officer, the detective gathered that the defendant was cooperating with authorities.) The fact that the defendant was not charged, the detective testified, was the sort of information that Roanoke City Police officers usually omit from search warrant affidavits.

## Discussion

### A. *Standards*

"The question whether the Fourth Amendment has been violated is always 'a question of fact to be determined from all the circumstances'." *Malbrough v. Commonwealth*, 275 Va. 163, 168, 655 S.E.2d 1 (2008), quoting *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). The prerequisite for issuance of a valid search warrant is a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, or contraband may be found in the place to be searched. *Johnson v. United States*, 333 U.S. 10 (1948); *Warden v. Hayden*, 387 U.S. 294 (1967).

"In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Brinegar v. United States*, 338 U.S. 160, 183 (1949). Probable cause is "a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), and a reviewing court must read search warrant applications and affidavits with common sense, and not in a grudging, hypertechnical fashion. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

After-the-fact scrutiny of the affidavit's sufficiency should be deferential: "[T]he reviewing court's duty 'is simply to assure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed'." *Anzualda v. Commonwealth*, 44 Va. App. 764, 775, 604 S.E.2d 749 (2005) (*en banc*) (internal citations and one level of internal quotation marks omitted) quoting *Gates*, 462 U.S. at 238-39). In determining the existence of probable cause to search, "we are not called upon to determine whether the offense charged has been committed. We are concerned only

with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched." *Illinois v. McArthur*, 531 U.S. 326, 337 (2001).

## B. *Deficiencies*

The Commonwealth's Attorney elicited from the detective the fact that the magistrate asked no questions before issuing the search warrant, and the fact that he furnished the magistrate no information beyond that contained in the affidavit. The reviewing magistrate cannot "serve merely as a rubber stamp for the police." *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Mosher Steel-Virginia v. Teig*, 229 Va. 95, 103, 327 S.E.2d 87 (1985). Everything that the magistrate knew about the basis for issuing a search warrant was, then, contained within the four corners of the affidavit.

> As Chief Justice Marshall explained a long time ago, "[T]he judge sees only with judicial eyes, and knows nothing respecting any particular case of which he is not informed judicially. . . . The looseness which would be introduced into judicial proceedings [otherwise] would prove fatal to the great principles of justice."

*McMillan v. Commonwealth*, 2009 Va. App. LEXIS 118 (Va. App., Record No. 2074-07-2, Mar. 17, 2009) (separate opinion of Judge Humphries) (quoting *United States v. Wilson*, 32 U.S. 150, 161, 8 L. Ed. 640 (1833), and citing *Vaughan v. Galax*, 173 Va. 335, 342-43, 4 S.E.2d 386, 389 (1939); *panel opinion adhered to in part and indictment dismissed*, 55 Va. App. 392, 686 S.E.2d 525 (2009) (*en banc*).

What evidence did the affidavit present to the magistrate that would lead a person of ordinary prudence, using common sense, to believe that cocaine probably would be found at the defendant's house on the date that the warrant was sought and served?

The answer, of course, is None.

One of the detective's statements in the affidavit was, in effect, that where there are drug dealers, there are drugs. As true as that statement may be — and the Supreme Court and other courts have accepted the truth of this proposition — it begs the question. Without more, it furnishes not a scintilla of cause to believe that it is probable — more likely than not — that contraband, or evidence, instrumentalities, or fruits of a crime, will be found in defendant Tucker's home.

What of the fact that, a dozen years earlier, Tucker was convicted of selling narcotics, or the fact that, two years earlier, he admitted that he had done so and drugs were found in his home? "The general rule is well established that in a criminal prosecution, proof which shows or tends

to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged." *Scates v. Commonwealth*, 262 Va. 757, 761, 553 S.E.2d 756 (2001) (quoting *Gates*, 462 U.S. ___). More to the point, one cannot rationally infer that, more likely than not, cocaine will be found in Tucker's home on the day the warrant is issued from Tucker's twelve-year-old conviction, or from the fact that narcotics were being sold at his home approximately two years earlier.

Little need be said about the anonymous tip received via Crime Line. "When the factual basis for probable cause or reasonable suspicion is provided by an anonymous informant, the informant's veracity or reliability, and the basis of his or her knowledge are 'highly relevant' factors in the overall totality of the circumstances analysis." *Harris v. Commonwealth*, 276 Va. 689, 695, 668 S.E.2d 141 (2008); *see also Russell v. Commonwealth*, 33 Va. App. 604, 535 S.E.2d 699 (2000). The detective did not have, and therefore could not furnish, any information about the informant's veracity or the basis of the informant's knowledge.

> An anonymous tip has a relatively low degree of reliability, requiring more information to sufficiently corroborate the information contained in the tip. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity'." . . . .
> An anonymous call that provides no predictive information leaves the police without a means to test the tipster's knowledge or credibility. *Id.*, 695-96.

The centerpiece of the affidavit, of course, is that narcotics dealers commonly use baggie corners to distribute their wares, and the detective found some plastic bags ("baggies") that were missing their corners in the trash from the defendant's home.

In answer to a question from the bench at the suppression hearing, the attorneys for the Commonwealth and the defendant reported that they had searched, without success, for cases in which a judicial officer found probable cause to issue a search warrant based in whole or in part on an affiant's report of plastic bags without corners. The court, in its own research, has found a handful of federal district court decisions, none officially published, in which plastic bags with the corners removed were part of the totality of the circumstances that led to the issuance of search warrants. In a significant way, those cases are starkly different from this

one. In every one of those cases, the officer who searched the defendant's trash also found drugs or drug residue. *See, e.g., Gulley v. Haymaker,* 2009 U.S. Dist. LEXIS 127839 (W.D. Pa., Mar. 4, 2009) (trash pull yielded, among other things, two large bags with marijuana residue, 66 baggies with corners removed, "several items of marijuana in the baggies") *United States v. Velasquez,* 2006 U.S. Dist. LEXIS 48364, 2006 WL 1878892 (Case No. 1:05 CR 0558, N.D. Ohio July 6, 2006), a detective conducted a trash pull. "In the trash bags, he found mail bearing the Defendant's name and the apartment's address. He also recovered corner-ripped plastic bags which, based on his experience as a vice detective, he testified were 'drug packing materials.' He also recovered a plastic bag with suspected cocaine residue in it." Before seeking and obtaining the warrant, the detective field-tested the bag. It tested positive for cocaine. "Under the circumstances of this case, where a tip from the CI [confidential informant] prompted surveillance of the Defendant's apartment, the Court finds that probable cause existed based on the trash-pull evidence alone, though the Court acknowledges that this is a close call."); *United States v. Hurn,* 2006 U.S. Dist. LEXIS 42768 (No. 05-CR-85-S, W.D. Wisc. 2006) (once a week for four weeks, detective conducted trash pulls, searching multiple garbage bags each time. She found baggie corners, some with traces of cocaine in them, bags, and other packaging. On three of the four occasions, cocaine or cocaine residue was present. "The frequency and amount of the baggie corner evidence, combined with recovery of cocaine residue on three separate dates, established that somebody in Hurn's residence repeatedly was packaging cocaine for resale.") The court has not found any case — officially reported or otherwise — in which a court mentioned the discovery of baggies without corners, without drugs or drug residue, as contributing to a probable cause finding. And, to reiterate, no such case has been cited by counsel.

Plastic bags and baggie corners can be used for illegal purposes. They are not, in themselves, however, contraband or unlawful. They can be used, obviously, for many lawful purposes. The subject under discussion is entry of a person's home — and "[s]o sacred is the home that the Constitution will not tolerate a physical invasion of it 'by even a fraction of an inch'." *Kyllo,* 533 U.S. at 37 (citations omitted). In this context, without more — and there is no more — a reasonably prudent person, applying common sense cannot say that the baggies that the detective found in the "trash pull" furnished "reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched." *Illinois v. McArthur,* 531 U.S. 326, 337 (2001).

*C. The Inapplicable Exception*

As noted above, the Supreme Court held in *United States v. Leon*, 468 U.S. 897 (1984), that evidence need not be excluded if it was obtained in good-faith reliance on a search warrant. This is so, Justice White explained, because:

> If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect . . . it must alter the behavior of individual law enforcement officers or the policies of their departments.

*Id.* at 918.

Suppression is appropriate, however, when a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 922–23. When the magistrate issues a warrant based on a "bare-bones affidavit," the good faith exception does not apply. *Id.* at 913. This affidavit, in this court's view, is, if not a bare-bones affidavit, the next-best-thing to it. On its face, viewed objectively, the affidavit cannot support a reasoned belief in the existence of probable cause to search.

Further, the detective, testifying at the suppression hearing, demonstrated that the purposes underlying the exclusionary rule would be advanced by applying that rule, and not the good faith exception, in this case. When the detective was asked why he included the uncorroborated, anonymous, three-week-old "tip" in the affidavit, he explained that, to his mind, the tip had been corroborated and therefore was properly presented to the magistrate. The detective strongly defended this position. If he is to be deterred from taking such a view in future cases, the exclusionary rule should apply to the case at bar.

The court is also constrained to apply the exclusionary rule, and not its good faith exception, by the manner, described above, in which the detective selectively edited the information contained in the affidavit. The magistrate, for example, had a right to know that information described as emanating from an "Intel report" came from a call to Crime Line.

## Conclusion

For the foregoing reasons and such other reasons as may appear of record, the court will grant the defendant's motion to suppress all evidence seized as a result of the execution of the search warrant.