### Richmond

BUSKY WILSON SCOTT

V.

COMMONWEALTH OF VIRGINIA

Record No. 831609.

November 30, 1984.

Present: All the Justices.

*David H. Frackelton (Widener & Frackelton,* on brief), for appellant.

*Julia Krebs-Markrich, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In a jury trial, Busky Wilson Scott was convicted of statutory burglary while armed with a deadly weapon with intent to commit abduction, Code § 18.2-91, abduction with intent to defile, Code § 18.2-48, displaying a firearm while committing abduction, Code § 18.2-53.1, and two counts of abduction, Code § 18.2-47. He was sentenced to life imprisonment for abduction with intent to defile and a total of 42 years for the other offenses. The trial court suspended the terms of years, effective on parole from the life sentence. Scott's appeal presents two questions: whether the evidence was sufficient to prove intent to commit abduction as an element of the statutory burglary charge, and whether it was error to admit evidence, on the charge of abduction with intent to defile, that he had actually raped the victim, after transporting her to Tennessee. We find no error in the trial court's rulings on these questions.

The essential facts are undisputed. Scott had been engaged in a stormy relationship with Susie Amburgy for over two years, having stayed with her in her apartment in Bristol, Virginia, from time to time. The relationship deteriorated in the summer of 1982, culminating in Scott's chaining Susie in an abandoned house and threatening to shoot her. She extricated herself from this predicament, but thereafter received a telephone call from Scott in which he said he would kill her "before he'd ever let another man have [her]."

During the evening of July 9, 1982, Susie left her apartment with her sister, Loretta Kennedy, and two friends, Frieda Kendall and Billy Wayne Malcolm, to go to a nightclub in Bristol, Tennessee. The sister and two friends left Susie at the nightclub at about 1:30 a.m., and returned to Susie's apartment. Scott, who had broken in through a bedroom window, was waiting there. He stepped out of a closet and confronted them with a pistol in one hand and a piece of glass in the other. He told them he had been watching them from a hill behind the building and that he had been "setting there watching the house for days and days and days just waiting." He told Loretta Kennedy that he had been "watching

the apartment for four days and nights, and that every time [they] went in and out that he had a gun at [their] backs." He told them that his intention was to kill Susie when she came home, to kill whoever accompanied her, and then to kill himself.

Scott kept the three captive in the living room about an hour, pointing the cocked pistol at them, waiting for Susie's return. He then herded them into a closet and locked the door. They could hear him moving around the apartment "tearing things." About 5:30 a.m., he ordered Loretta Kennedy out of the closet. At gunpoint, he took her to his car and drove her to an apartment in Bristol, Tennessee. He took her inside and, she testified, told her "he thought of a way he was going to get back at Susie . . . through me . . . she knew the sun set and rose in me, and that's how he could hurt her was through me." Scott then raped Loretta Kennedy and allowed her to leave. She made her way back to Susie's apartment in Virginia, where she reported the rape to the police. They found her "in very bad shape. She was incoherent."

At trial, Scott testified in his own behalf. Asked why he broke into Susie's apartment, he said, "I was going to wait till she come in, and I was going to set her down on the couch. I was just going to set her down . . . I was going to sit down beside of her and shoot myself . . . I just wanted her to see me blow my brains out." He said that he did not expect to encounter the other three people in the apartment.

The defendant argues that statutory burglary under Code § 18.2-91, of which he was convicted, is a specific-intent crime, *Taylor v. Commonwealth*, 207 Va. 326, 150 S.E.2d 135 (1966), and that proof of the intent is as necessary as proof of the act itself. *Ridley v. Commonwealth*, 219 Va. 834, 252 S.E.2d 313 (1979). He points out that the Commonwealth elected to proceed on the theory that his entry was made with the specific intent to commit abduction, and that the only proof of any such intent at the time of the entry was his own testimony.[1] This, he argues, was

---

[1] The testimony of the three victims, and the surrounding circumstances, might have supported the theory that Scott entered the apartment with intent to commit murder. Scott, however, was not charged with that offense, which is defined by Code § 18.2-90. The Commonwealth argues on appeal that the evidence might support the inference that Scott entered with the intent to do what he actually did: seize and detain the victims. This theory is untenable because there is no evidence that he had any reason to expect them to appear. We shall, therefore, confine our consideration to the question whether the evidence supports the inference that he entered with intent to abduct Susie Amburgy.

insufficient to support an inference that he intended to abduct anyone. We do not agree.

When an unlawful entry is made into the dwelling of another, the presumption is that the entry is made for an unlawful purpose. *Ridley*, 219 Va. at 836, 252 S.E.2d at 314. The specific purpose, meaning specific intent, with which such an entry is made may be inferred from the surrounding facts and circumstances. *Tomkins* v. *Commonwealth*, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971). Thus, the jury was entitled to draw on all the circumstances shown by the evidence to determine what Scott's intent actually was when he entered the apartment.

Scott was obsessed with jealousy. He had previously abducted Susie Amburgy and chained her in an abandoned house. He had threatened to kill her "rather than let another man have [her]." He broke into her apartment at night, at a time he knew she was away, and awaited her with a loaded firearm. From these circumstances the jury was free to conclude that, whatever his purpose, he intended to accomplish it by force or intimidation, not by mere gentle persuasion. If his statement of intention is accepted as unvarnished truth, his purpose was to "set her down on the couch" and make her watch him "blow [his] brains out." This frightful prospect, if carried out by force or intimidation, necessarily involves a detention and a deprivation of personal liberty.

Code § 18.2-47 provides, in pertinent part, "Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, *detains or* secretes the person of another, with the intent to deprive such person of his personal liberty . . . shall be deemed guilty of 'abduction'. . . ." (emphasis added). The defendant's announced intention, therefore, clearly comes within the language of the statute. He intended, according to his account, to deprive Susie Amburgy of her personal liberty to the extent necessary to compel her to sit on a couch while he shot himself in her presence, an ordeal which, the jury might reasonably conclude, no normal person would willingly endure. This necessarily involves an intention to detain her for the length of time necessary for his purpose. The question remains whether mere detention is enough.

In *Johnson* v. *Commonwealth*, 221 Va. 872, 275 S.E.2d 592 (1981), we analyzed Code § 18.2-47 in the light of the common-law elements of kidnapping, which required asportation of the victim from one place to another. *See People* v. *Adams*, 389

Mich. 222, 205 N.W.2d 415 (1973). Our statute provides that the terms "kidnapping" and "abduction" are to be synonymous. In *Johnson*, a defendant appealed a conviction of abduction with intent to defile. The evidence was that he entered a woman's apartment, seized her from behind, kissed her and made sexual advances to her, holding her 10 to 15 seconds. When she resisted and screamed, he released her and left. We noted the absence of evidence of asportation, and observed:

> At some point, unless the General Assembly acts first, this court must decide whether the legislature, in enacting § 18.2-47, intended the mere seizure and detention of a victim without legal excuse, and unaccompanied by any asportation, to constitute the separate crime of abduction. However, the case under review is not a proper vehicle for such a decision.

*Johnson*, 221 Va. at 879, 275 S.E.2d at 596. We reversed Johnson's conviction of abduction with intent to defile because the evidence did not support a finding that Johnson intended either to defile his victim[2] or to deprive her of her personal liberty. Rather, the evidence was consistent with an intent to persuade her to engage in consensual sexual intercourse with him. This view was strengthened by his sudden abandonment of his purpose at the first sign of resistance. The question of the sufficiency of detention, without asportation, as an element of abduction, remains open, and is now squarely presented. The General Assembly has made no change in the abduction laws since *Johnson* was decided.

The Supreme Court of North Carolina was faced with a similar task of statutory construction in *State* v. *Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978). Fulcher had been convicted of, among other things, two counts of "kidnapping" for entering a motel room, tying the two female occupants' hands with tape, and forcing them to lie on a bed and commit sexual acts. The court noted that kidnapping, at common law, had required asportation of the victim from one place to another as an essential element of the crime, an element lacking in the *Fulcher* case. The North Carolina legislature, however, had enacted Gen. Stat. § 14-39(a), effective the year before Fulcher's offense. It provided, in pertinent part, "Any person who shall unlawfully confine, restrain *or*

---

[2] "Defile" has the same meaning as "sexually molest." *Fitzgerald* v. *Commonwealth*, 223 Va. 615, 292 S.E.2d 798 (1982), *cert. denied*, 459 U.S. 1228 (1983).

remove from one place to another, any other person . . . without the consent of such person, shall be guilty of kidnapping if such confinement, restraint, *or* removal is for the purpose of. . . ." (emphasis added). The court concluded that it was controlled by the legislative intent, which could best be ascertained by examining the state of the law prior to the enactment, and contrasting it with the statutory language the legislature had chosen. This contrast made apparent a legislative intent to change the common law. Fulcher's conviction was affirmed, based upon detention alone, without asportation. *Id.*, at 520, 243 S.E.2d at 350.

We find the foregoing reasoning persuasive, and hold that Code § 18.2-47 supersedes the common law. We shall construe it according to its plain meaning and evident intent. Because it casts its several prohibited acts in the disjunctive, each is independently sufficient to support a conviction. Accordingly, the physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception, without any asportation of the victim from one place to another, is sufficient. Because Scott's announced intent when breaking into the Amburgy apartment, coupled with inferences properly drawn from the surrounding circumstances, included all of the requisite elements of abduction, the evidence was sufficient to support his conviction of statutory burglary with intent to commit abduction.

We recognize, as we did in *Johnson*, that in rape, robbery, and assault cases there is usually some detention, and often a seizure, of the victim. The constitutional problems which may be created by such an overlapping of crimes are, however, not before us for decision in this case.

Scott also contends that the trial court erred in admitting evidence that, after abducting Loretta Kennedy from the apartment in Virginia, he then committed rape upon her in Tennessee. He argues that this evidence of a crime outside the court's jurisdiction so inflamed the jury that he was, in effect, punished for the Tennessee crime as well as that for which he was on trial, as shown by the maximum penalty he received. We disagree.

Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial. The fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the

crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses. *Harris* v. *Commonwealth*, 211 Va. 742, 180 S.E.2d 520 (1971); *Williams* v. *Commonwealth*, 208 Va. 724, 160 S.E.2d 781 (1968); *Timmons* v. *Commonwealth*, 204 Va. 205, 129 S.E.2d 697 (1963); *Rees* v. *Commonwealth*, 203 Va. 850, 127 S.E.2d 406 (1962); *Walker* v. *Commonwealth*, 28 Va. (1 Leigh) 574, 576-77 (1829). *See also Tuggle* v. *Commonwealth*, 228 Va. 493, 503, 323 S.E.2d 539, 545 (1984) (this day decided). Evidence of such connected criminal conduct is often relevant to show motive, method, and intent. Indeed, it may be the only way in which such matters may be shown, as was the case here. Even where another crime is not inextricably linked with the offense on trial, it may nevertheless be proved if it shows the conduct and feeling of the accused toward his victim, his motive, intent, plan or scheme, or any other relevant element of the offense on trial. *Kirkpatrick* v. *Commonwealth*, 211 Va. 269, 176 S.E.2d 802 (1970).

The general rule excluding evidence of "other crimes" extends only to crimes which are unrelated to those on trial, and which are offered solely for the purpose of showing that the accused was a person of such character as to be a likely perpetrator of the offense charged. *Kirkpatrick*, 211 Va. at 272, 176 S.E.2d at 805. If the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant guilty of another crime. *Day* v. *Commonwealth*, 196 Va. 907, 914, 86 S.E.2d 23, 26 (1955). *See also* C. Friend, The Law of Evidence in Virginia §§ 152-53 (2d ed. 1983).

Here, the court properly cautioned the jury that Scott was not on trial for any offenses in Tennessee, but that the evidence was to be considered "solely for the purpose of showing intent or motive with respect to the charge which is before the court today. And the evidence should not be considered for any other purpose." We find no error in the rulings of the trial court and the convictions will be

*Affirmed.*