COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Elder and Bray
Argued at Chesapeake, Virginia


CHRISTOPHER EUGENE MOORE

MEMORANDUM OPINION[*] BY
v.    Record No. 0915-99-1          JUDGE RICHARD S. BRAY
                                       FEBRUARY 29, 2000
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Robert W. Curran, Judge

Mark A. Stallings (Glasser and Glasser,
P.L.C., on brief), for appellant.

Shelly R. James, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Christopher Eugene Moore (defendant) was convicted in a bench trial of burglary "with intent to commit assault and battery," a violation of Code § 18.2-91.  On appeal, defendant challenges the sufficiency of the evidence to prove the requisite intent. Finding no error, we affirm the conviction.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeal.

In reviewing the sufficiency of the evidence, we consider the record "'in the light most favorable to the Commonwealth, giving

_____

* Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

it all reasonable inferences fairly deducible therefrom.  In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth . . . .'"  Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted).  The credibility of the witnesses, the weight accorded testimony, and the inferences drawn from the proven facts are matters to be determined by the fact finder.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  The judgment of the trial court will not be disturbed unless plainly wrong or unsupported by evidence.  See Code § 8.01-680.

Viewed accordingly, the record discloses that, at approximately 5:50 a.m. on September 25, 1998, defendant "knocked" at the apartment window of his estranged wife, Agnes James, and "asked [her] to open the door."  James thought defendant "did not know where [she] was living," and he was not welcome.  Nonetheless, James opened a door, which accessed the hallway of the apartment building, but "told [defendant] that he would have to talk . . . [there] 'cause [her] children [were] in [the apartment]."  Defendant immediately began "talking" to James and "asking [her] questions."  When she "didn't respond the way he wanted" or "tried to go back" into her apartment, defendant would "grab [her] under her breast and . . . shove [her] up against the wall."  On "several" occasions, he "grabbed [James] around the neck and choked" her.  When defendant momentarily left the

-

building to advise someone waiting for him that he would "be out in a minute," James quickly re-entered her apartment, locked and "put the chain on the door."

Defendant soon returned, however, knocked and repeatedly demanded that James "open the door." When she refused, defendant began to "push on the door" and, "finally," despite James' resistance "against the door," "broke [it] open with force," "just busted the door open." Upon entry, defendant was confronted by James' nine-year-old son, armed with a "stick" in an effort to protect her. Defendant took the stick from the child, assuring him, "I'm not gonna hurt your mother." A day-care van then arrived for James' children, and she escorted them to the vehicle, with defendant "right there behind [her]." As her daughter stepped inside, James "whispered in her ear . . . to call 9-1-1." Defendant returned to the apartment with James and resumed "pushing" her, "calling [her] names," attempting to kiss and otherwise "badger" her. "Finally," he angrily declared, "Forget you," and left.

James' evidence included a letter to her from defendant, then in jail as a result of the incident. Defendant wrote that he was "ashamed" and "sorry" for his "bad actions" and expressed "awful" feelings "because [he] hurt, . . . disappointed, . . . and let [James] down." He urged her to drop "these charges" and pledged, "I will never put my hands on you to hurt you again." Later, at trial, defendant admitted that he "grabbed [James] on her torso so

-

she would just hear what I had to say," to talk and "work out our problems."

To convict defendant of the instant offense, the Commonwealth was required to prove that he broke and entered James' apartment "with intent to commit assault and battery."  See Code § 18.2-91. Defendant does not dispute the unlawful entry but contends that the evidence failed to establish the necessary intent.

"[W]hen an unlawful entry is made into a dwelling, the presumption is that the entry was made for an unlawful purpose." Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971).  "The specific purpose, meaning specific intent, with which such an entry is made may be inferred from the surrounding facts and circumstances."  Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984).  "Because direct proof of intent is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

Here, defendant's conduct both before and after he "busted open" the apartment door clearly manifested a continuing intent to assault James.  During the initial encounter in the hallway, he repeatedly pushed, grabbed, shoved, and choked her, bruising her

-

body and injuring her breasts.  Later, when denied entry to the locked apartment, he "broke the door open with force," an act attended by such violence that James' son intervened to protect his mother, and James asked her daughter to dial 911 for assistance.  Once inside, defendant again pushed, "slapped" and otherwise abused James, both verbally and physically.  In subsequent correspondence to James, defendant expressed remorse and contrition and urged James to "drop the charges," statements reflective of a consciousness of guilt for conduct which he described as "bad actions."

The record, therefore, provides compelling evidence of defendant's intent to assault and batter James from the inception of the confrontation in the hallway, a mindset that accompanied the unlawful entry into her apartment and ended only when defendant left the premises in anger and frustration.

Accordingly, we find the evidence sufficient to support the conviction and affirm the decision of the trial court.

<u>Affirmed.</u>

-