COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, AtLee and Malveaux
Argued by videoconference


MICHAEL THOMAS DALTON

MEMORANDUM OPINION[*] BY
v.        Record No. 1228-22-1                    JUDGE MARY GRACE O'BRIEN
FEBRUARY 6, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Tanya Bullock, Judge

S. Mario Lorello (Zoby & Broccoletti, P.C., on brief), for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Michael Thomas Dalton of strangulation, two counts of abduction, and four counts of assault and battery of a family member. On appeal, Dalton challenges the sufficiency of the evidence to sustain his convictions for strangulation, abduction, and one assault. Finding no error, we affirm Dalton's convictions.

BACKGROUND

On appeal, we state the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). "In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

### I. January 3, 2020 Offense

On January 3, 2020, Dalton and his fiancée, N.T.,[1] argued as they drove to a friend's birthday dinner. When Dalton stopped at a red light, he yelled at N.T., "If you want to leave, then get the fuck out of the car." N.T. turned to open the passenger door, but Dalton grabbed the back of her neck and pulled her towards him, preventing her from exiting.

At trial, the Commonwealth introduced photographs N.T. took shortly after the incident. The photographs depicted bruising on the back of her neck from Dalton's assault.

Dalton denied that he and N.T. had argued on the way to the dinner and testified that he never grabbed N.T. When asked how N.T. obtained the bruising on her neck, Dalton stated that the "only thing [he could] think of" was that he pulled her back into the car to protect her from oncoming traffic.

### II. May 21, 2020 Offenses

On May 21, 2020, Dalton began another argument with N.T. which became "physical." N.T. ran from their house into the driveway, but Dalton chased her. Surveillance video recorded Dalton place N.T. in a choke hold, lift her from the ground, and carry her by her neck into the backyard. While Dalton had her in the choke hold, he told N.T. that she "couldn't leave." Once in the backyard, Dalton pushed N.T. onto the deck. When N.T. stood up, Dalton pushed her again, grabbed her arm, and forced her back inside the house. N.T. suffered from neck pain for the next two days.

### III. August 22, 2020 Offenses

On August 22, 2020, N.T. decided to end her relationship with Dalton. An argument ensued, and N.T. began to pack a suitcase so she could leave. Dalton initially agreed to "let [N.T.] go," but then "changed his mind." He "ripped the suitcase out of [N.T.'s] hand," pushed her onto

---

[1] We use the victim's initials to protect her privacy.

the bedroom floor, sat on her, placed both his hands around her neck, and squeezed for 10 to 12 seconds. N.T. could not breathe.

After Dalton released her, N.T. tried to leave the house, but for approximately two hours, Dalton blocked the door. Each time N.T. tried to push past Dalton, he would either push her back or grab her arm. Dalton told her multiple times, "You're not fucking leaving." N.T. tried to exit through the back door, but Dalton ran ahead of her and blocked that door, too. During one of N.T.'s escape attempts, Dalton pushed her against the back of a couch, grabbed the front of her throat, and squeezed for several seconds. N.T. could not breathe, and she thought Dalton was going to kill her.

Eventually, Dalton calmed and "was very apologetic." After he left the house to get dinner, N.T. walked to a nearby motel and photographed her injuries, which included bruises on the inside of her left arm and red scratch marks on the front of her neck. The Commonwealth introduced those photographs at trial.

### III. Trial

At the conclusion of the case, the court convicted Dalton of three counts of assault and battery for the incidents on January 3, May 21, and August 22, 2020; two counts of abduction, one occurring on May 21 and one on August 22, 2020; and of strangulation for the incident on August 22, 2020.[2]

### ANALYSIS

On review of the sufficiency of the evidence to support a conviction, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). We examine the evidence "in the light most

---

[2] The court also convicted Dalton of a fourth count of assault and battery occurring on May 10, 2020. Dalton does not challenge that conviction on appeal.

- 3 -

favorable to the Commonwealth, as the prevailing party below, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Farmer v. Commonwealth*, 61 Va. App. 402, 416 (2013)).

I. The evidence was sufficient to convict Dalton of the August 22, 2020 strangulation.

Dalton argues that the Commonwealth failed to prove that the red scratch marks on the front of N.T.'s neck were caused by Dalton's strangulations because N.T. did not explicitly testify that she received the marks during the strangulations. Instead, he speculates that they may have come from his "additional assaultive behavior" on August 22, 2020.

"Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation." Code § 18.2-51.6(A). "'[B]odily injury' within the scope of [the strangulation statute] is any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function or bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015) (quoting Code § 18.2-51.6(A)).

The red scratch marks on the front of N.T.'s neck are sufficient to establish a bodily injury under the strangulation statute. *See id.* at 478-79 (affirming a strangulation conviction when the defendant "held the victim down with his hand on her neck" so "that she was unable to . . . breathe" and "she had a red mark on her neck"). Dalton's speculation that the marks may have come from his other assaults on N.T. is without support in the record. The other "assaultive behavior" N.T. described was Dalton pushing her, ripping a suitcase out of her hand, repeatedly blocking the doors, and grabbing her arm to keep her from leaving the house; she never testified

- 4 -

that Dalton touched her neck at any other point except while strangling her. "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Taylor v. Commonwealth*, 61 Va. App. 13, 30 (2012) (alteration in original) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). Thus, the evidence supports the court's conclusion that the scratch marks on N.T.'s neck occurred when Dalton strangled her on August 22, 2020.

II. The evidence was sufficient to convict Dalton of abducting N.T. on May 21, 2020 and August 22, 2020.

Dalton argues that the evidence was insufficient to support his convictions for abducting N.T. because both detentions were incidental to his assaults.

Abduction is the unjustified "tak[ing], transport[ing], detain[ing] or secret[ing]" of another person by means of "force, intimidation or deception" with the intent "to deprive such other person of [her] personal liberty." Code § 18.2-47(A). "[T]he statutory offense is complete upon 'the physical detention of a person, with the intent to deprive [her] of [her] personal liberty, by force, intimidation, or deception.'" *Lawlor v. Commonwealth*, 285 Va. 187, 224 (2013) (quoting *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)).

Under the incidental detention doctrine, if a defendant is "accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct," he may be convicted of "separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." *Swezey v. Commonwealth*, 77 Va. App. 809, 815 (2023) (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985)).

"The only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the

required elements of the other offense." *Lawlor*, 285 Va. at 225. Thus, our task is to determine "whether sufficient evidence exists to support the fact[]finder's determination that a defendant used greater restraint than that necessary to commit the simultaneously charged offense." *Epps v. Commonwealth*, 66 Va. App. 393, 403 (2016).[3]

"[W]hether the detention established by the evidence is 'the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault,' is a question of law to be determined by the court," *Swezey*, 77 Va. App. at 815 (alteration in original) (quoting *Lawlor*, 285 Va. at 229), but we "defer to the trial court's findings of historical fact," *Vay v. Commonwealth*, 67 Va. App. 236, 253 (2017) (quoting *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004)).

### A. The May 21, 2020 Abduction

Dalton contends that the May offense was a "single event" and that any detention was "subsumed by the assault and battery" offense.

During the May incident, Dalton placed N.T. in a choke hold, lifted her from the ground, and then carried her by her neck from their driveway to their backyard. He later forced N.T. into the house. The evidence was sufficient to establish that Dalton completed the assault and battery when he placed N.T. in a choke hold. Dalton's subsequent acts of lifting N.T., carrying her into the backyard, and then forcing her into the house were separate from, not incidental to, the initial assault. In taking these actions, Dalton "used greater restraint than that necessary to commit" the initial assault. *Epps*, 66 Va. App. at 403.

---

[3] While the factors set out in *Hoyt v. Commonwealth*, 44 Va. App. 489, 494 (2004), may be considered "when helpful," *Swezey*, 77 Va. App. at 817, consideration of those factors does not aid the resolution of this case. Instead, we find that the "mandatory" test in *Lawlor*, 285 Va. at 225, conclusively addresses and controls the issues presented. *See Swezey*, 77 Va. App. at 817 ("[T]he *Lawlor* test is mandatory and consideration of the *Hoyt* factors is permissive. . . . [T]he *Hoyt* factors may be considered when helpful.").

Dalton's forcible asportation of N.T. further supports a finding that Dalton's abduction of N.T. was independent of the assault. Although "some degree of *detention* [is sometimes] inherent in . . . assault," asportation of the victim is not. *Vay*, 67 Va. App. at 251 (quoting *Lawlor*, 285 Va. at 225 n.13); *see also Scott*, 228 Va. at 526 (holding that statutory abduction requires no proof of asportation); *Wiggins v. Commonwealth*, 47 Va. App. 173, 189 (2005) (holding that a robbery did not subsume an abduction under the incidental detention doctrine when "the victim was forced to walk approximately 'twenty-three feet' to the front cash register and then approximately 'eight feet' to the drive-through cash register").

Accordingly, Dalton's May abduction of N.T. was "separate and apart from" the assault. *Swezey*, 77 Va. App. at 819.

### B. The August 22, 2020 Abduction

Dalton further contends that "each of the overt acts that would potentially give rise to an abduction [during the August incident was] accompanied by an assaultive act."

Like the May abduction, the August abduction was not incidental to Dalton's assault and battery of N.T. The evidence established that Dalton "ripped" away a suitcase N.T. was holding and pushed her to the floor. The assault and battery was thus complete. Dalton then prevented N.T. from leaving the house by blocking the exits for approximately two hours. When N.T. tried to walk around him, he pushed her back or grabbed her arm and said, "You're not fucking leaving." These actions "exceeded the minimum necessary to complete the" assault and battery, "thus establishing the separate crime of abduction." *Swezey*, 77 Va. App. at 818-19 (quoting *Lawlor*, 285 Va. at 225).

### III. The evidence was sufficient to convict Dalton of assault and battery of a family member for the incident on January 3, 2020.

Finally, Dalton argues that the evidence was insufficient to support his conviction for assaulting N.T. on January 3 because the Commonwealth failed to prove his intent. He contends

that no evidence "explain[ed] the ongoing circumstances at the intersection" and the evidence failed to disprove his alternative theory that he grabbed N.T. to keep her in the vehicle for her safety.

The crime of assault and the crime of battery are independent, common law crimes, "although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010); *Kelley v. Commonwealth*, 69 Va. App. 617, 625 (2019). "Placing an individual in reasonable apprehension of bodily harm constitutes an assault." *Kelley*, 69 Va. App. at 625. A battery is "the actual infliction of corporal hurt on another that is done willfully or in anger." *Montague v. Commonwealth*, 278 Va. 532, 541 (2009). "'One cannot be convicted of assault and battery "without an intention to do bodily harm—either an actual intention or an intention imputed by law."'" *Parish*, 56 Va. App. at 330 (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)).

"Proving intent by direct evidence often is impossible." *Adams*, 33 Va. App. at 470. "'Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances,' including the 'words or conduct' of the alleged offender." *Secret v. Commonwealth*, 296 Va. 204, 228-29 (2018) (quoting *Commonwealth v. Herring*, 288 Va. 59, 75 (2014)); *see also Parish*, 56 Va. App. at 331 ("A perpetrator's intent may be inferred from the nature of the overt act and the surrounding circumstances." (quoting *Clark v. Commonwealth*, 279 Va. 636, 642 (2010))). Moreover, the intent necessary to sustain an assault and battery conviction "may be imputed if the touching is 'done in a rude, insolent, or angry manner.'" *Parish*, 56 Va. App. at 331 (quoting *Adams*, 33 Va. App. at 469). A fact finder's "decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011).

Dalton's words and the nature of his actions support the court's conclusion that he intended to harm N.T. During the argument, Dalton yelled at N.T., "If you want to leave, then get the fuck

out of the car." When she tried to do so, Dalton grabbed N.T. by the neck and pulled with enough force to injure her. From these circumstances, a reasonable fact finder could conclude, as the court did, that Dalton intended to harm N.T.

## CONCLUSION

For these reasons, we affirm Dalton's convictions.

*Affirmed.*