COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Fulton and Ortiz

MICAH ISAIAH RAMIREZ

                                                          MEMORANDUM OPINION*
v.       Record No. 1783-22-1                                 PER CURIAM
                                                             MARCH 19, 2024
COMMONWEALTH OF VIRGINIA

                    FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                               Rufus A. Banks, Jr., Judge

                    (Diallo K. Morris; Morris, Crawford & Currin, P.C., on brief), for
                    appellant. Appellant submitting on brief.

                    (Jason S. Miyares, Attorney General; Ken J. Baldassari, Assistant
                    Attorney General, on brief), for appellee.


        A jury convicted Micah Isaiah Ramirez of second-degree murder, statutory burglary, two

counts of robbery, two counts of abduction, and six counts of use of a firearm in the commission of

a felony. On appeal, Ramirez challenges the sufficiency of the evidence to sustain 11 of his 12

convictions.[1] Ramirez acknowledges that he did not preserve his arguments in the trial court but

asks this Court to consider them under the ends of justice exception to Rule 5A:18. Finding the

ends of justice exception inapplicable, we affirm the trial court's judgment.[2]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Ramirez does not challenge the statutory burglary conviction.

[2] Having examined the briefs and record in this case, the panel unanimously holds that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a). In addition, "the dispositive issue or issues have been
authoritatively decided," and the appellant "has not argued that the case law should be
overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Around 6:00 p.m. on December 5, 2017, Shawn and Melissa Basnight had finished eating dinner when someone knocked on their door. When Melissa opened the door, Ramirez asked Shawn whether he had any marijuana. Shawn stated that he did not have any marijuana and moved to close the door. Ramirez and two other men rushed into the home. The two other intruders carried firearms and had not been visible when Melissa opened the door to Ramirez. The three intruders demanded that Shawn and Melissa lay "on the ground" and put their "head[s] down" or they would get "hurt." At trial, Melissa identified one of the intruders as Bryan Mack but did not know the third intruder.

Ramirez and Mack searched and ransacked the home while the unidentified intruder put his knee on Shawn's neck and held a firearm to his head. Ramirez instructed Melissa to walk to the bedroom, where he asked her where "everything" was. Assuming Ramirez was referring to marijuana and money, Melissa gave Ramirez over $100. The men also took about seven grams of marijuana but thought Shawn had "a lot more," so they repeatedly asked Melissa "where everything was." Eventually, Ramirez and Mack took Melissa and Shawn's cell phones,

prescription medication, and an electronic nail, which is used to smoke marijuana oil, then left the home.

Shawn chased the intruders outside and toward a silver car, with Melissa following shortly behind. Shawn did not own a firearm and did not have a weapon on his person. Ramirez stood near the car's driver's door while Mack stood near the trunk with a firearm in his hand. As Shawn approached the car, Mack told him to "get back, get back"; when Shawn ignored the command and demanded that the men return his belongings, Mack "fired the gun several times." Shawn turned to Melissa and said that he had been shot. Ramirez then stated, "[l]et's get the fuck out of here," and the assailants drove away in the car. Melissa memorized the car's license plate, ran to a neighbor's house, and told him to call 911.

When Chesapeake Police Officer Gary Ables arrived at the scene, Shawn was on the ground with multiple gunshot wounds to his arm, torso, back, and hip. Officer Ables rendered aid until paramedics arrived; they transported Shawn to the hospital. Officer Ables collected Shawn's clothing and did not discover a firearm or anything resembling a weapon. Shawn died at the hospital.

Around 7:00 p.m., Officer Zegelien and Detective Newton began searching for the silver car. They found the car at a nearby school and detained Ramirez, the sole occupant. Marijuana and a prescription pill bottle bearing a label with Melissa's name were in Ramirez's pockets. Marijuana paraphernalia and personal items from Shawn's home were in the car. Detective Vernon Ryder subsequently interviewed Ramirez at the police station. Ramirez initially stated that he had been "chillin' with [his] friends" in his girlfriend's car. Later in the interview, however, he denied being in the car and said that he did not "know nothing about nobody getting shot." Ramirez acknowledged that Melissa's prescription medicine was in his pockets but

claimed that somebody "gave it to [him]." Ramirez repeatedly refused to identify either of his two companions.

At 12:05 a.m., Brenda Pittman, a forensic technician, swabbed Ramirez's left and right hands for a primer residue test kit. Forensic analysis revealed that two particles characteristic of primer residue were found on the sample from Ramirez's left hand; one particle was found on the sample from his right hand. The forensic report explained that primer residue can be deposited on hands by "firing a weapon, handling a weapon, being in the proximity to the discharge of a weapon, or coming into contact with an object that has primer residue on it."

Dr. Wendy Gunther, an Assistant Chief Medical Examiner, performed Shawn's autopsy. Shawn suffered three gunshot wounds. One bullet entered his arm, severed his brachial artery, exited his arm, entered his lower chest, struck his spleen, and "went in and out of his intestines" before stopping in his lumbar spine. The second bullet went through his arm. The third bullet entered his back and travelled over his hip bone and "through the place where his colon would have been." Shawn also had a "graze wound on his abdomen." Dr. Gunther concluded that Shawn died from the gunshot wounds in his arm and torso.

After the Commonwealth finished its case-in-chief, the trial court asked Ramirez whether he had "a motion"; he responded that he did not "have any motions at [that] time." After a recess, Ramirez reiterated that he had "no other motions," and the matter proceeded to closing argument. After argument and deliberation, the jury convicted Ramirez of second-degree murder,[3] statutory burglary, two counts of robbery, two counts of abduction, and six counts of use of a firearm in the commission of a felony.

---

[3] The sentencing order contains a scrivener's error reciting the murder conviction as first-degree murder. The jury's verdict, however, reflects that it found him guilty of the lesser-included offense of second-degree murder. Accordingly, we remand the case to correct the scrivener's error under Code § 8.01-428(B).

ANALYSIS

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

"[T]o invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997). "Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense." *Id.* To demonstrate that a miscarriage of justice has occurred, an "appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* at 222.

Ramirez argues that the evidence was insufficient to convict him of second-degree murder as an accomplice because it demonstrated only that he was present at the scene. He argues there is no evidence that he encouraged or aided Mack before the murder. In fact, he asserts that he had fled from Shawn's home and was entering the car at the time of the shooting. Next, Ramirez argues that the evidence was insufficient to convict him of the robbery and abduction offenses because it failed

to prove that he intended to steal or deprive Shawn and Melissa of their liberty. He asserts that Melissa "assumed" the men were talking about the marijuana and money when they asked "where everything was" and that she could not remember whether Ramirez or Mack demanded their phones. He also argues that the evidence was insufficient to convict him of the use of a firearm offenses because he was unarmed and there is no evidence that he "directed or instructed others in the brandishing or use of their firearms."

By their express terms, the above arguments are attempts to demonstrate that "the Commonwealth *failed* to prove an element . . . of the offense[s]." *Redman*, 25 Va. App. at 221. Ramirez points to nothing in the record affirmatively proving that an element of the offense did not occur or that he was convicted for non-criminal conduct. Thus, his arguments are legally insufficient to invoke the ends of justice exception to permit us to consider the above sufficiency arguments raised for the first time on appeal.

Ramirez further contends that the evidence was insufficient to convict him of the abduction offenses as a matter of law because any detention was "incidental to and not separate and apart from" the robbery. He argues that detention is inherent in a robbery, and in this case, the detention entirely overlapped with the robbery and "added no more danger."

"[W]hether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." *Vay v. Commonwealth*, 67 Va. App. 236, 253 (2017) (quoting *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004)). "We defer to the trial court's findings of historical fact, but we review *de novo* the trial court's application of those facts to the law." *Id.* (quoting *Hoyt*, 44 Va. App. at 496 n.4).

Abduction is the unjustified "seiz[ing], tak[ing], transport[ing], detain[ing] or secret[ing]" of another person by means of "force, intimidation or deception" with the intent "to deprive such other person of [her] personal liberty." Code § 18.2-47(A). "[T]he statutory offense is complete upon 'the physical detention of a person, with the intent to deprive [her] of [her] personal liberty by force, intimidation, or deception.'" *Lawlor v. Commonwealth*, 285 Va. 187, 224 (2013) (quoting *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)). Statutory abduction, unlike common law abduction, requires no proof of asportation. *See Scott*, 228 Va. at 526 ("[A]sportation of the victim from one place to another, is [not necessary]."). An abduction conviction is consistent with double jeopardy principles when the restraint used "is separate and apart from, and not merely incidental to," the restraint inherent in crimes like rape, robbery, and assault. *Brown v. Commonwealth*, 230 Va. 310, 314 (1985). Under the incidental detention standard, "[t]he only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention *exceeded the minimum necessary* to complete the required elements of the other offense." *Lawlor*, 285 Va. at 225 (emphasis added) (citing *Powell v. Commonwealth*, 261 Va. 512, 541 (2001) (stating that the question is whether "there is sufficient evidence to support the finding of the jury that [the defendant] used *greater restraint than was necessary*" to commit the other offense)). Thus, our task is to determine "whether sufficient evidence exists to support the factfinder's determination that a defendant used greater restraint than that necessary to commit the simultaneously charged offense." *Epps v. Commonwealth*, 66 Va. App. 393, 403 (2016) (citing *Powell*, 261 Va. at 541).

Ramirez and his cohorts forced their way into the home and ordered Shawn and Melissa onto the floor at gunpoint. The unidentified intruder forced his knee onto the back of Shawn's neck and held a firearm to his head. Then, Ramirez forced Melissa off of the floor and into the bedroom. Thus, the record demonstrates that the intruders used greater and more dangerous

restraint than was minimally necessary to effectuate the robbery. A manifest injustice will not result by applying Rule 5A:18 under those circumstances. Accordingly, Ramirez's incidental detention argument is also barred by Rule 5A:18.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.