PRESENT:  All the Justices

LENNY ROCK KENNER

v.  Record No. 200027

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CLEO E. POWELL
February 25, 2021

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal arises from convictions of Lenny Rock Kenner ("Kenner") for animate object

sexual penetration, in violation of Code § 18.2-67.2, aggravated sexual battery, in violation of

Code § 18.2-67.3, and custodial sexual abuse, in violation of Code § 18.2-370.1.  On appeal, he

argues that the Commonwealth's evidence of child pornography was inadmissible at trial and

that his motion to have the jury individually polled on its guilty verdict was timely.  For the

following reasons, we will affirm the judgment of the Court of Appeals.

## I.  BACKGROUND

At the age of six, D.T. moved into an apartment with her cousin, Angela Robinson.

Kenner, Robinson's fiancé, also lived in the apartment.  D.T. later returned to her mother's home

in October 2015, after her seventh birthday.  After her return, D.T. told her mother and a

neighbor that Kenner touched in and around her "private" when she lived with him.  A warrant

for Kenner's arrest was issued and he was arrested in November 2015.

Immediately following Kenner's arrest, police executed a search warrant at the

apartment.  Officers recovered a desktop computer from Kenner's bedroom, a laptop from the

kitchen, and computer disks from his bedroom closet.  A password-protected user account on the

desktop contained an email account with Kenner's name, an autofill profile for Kenner with his

phone number and address, a student loan document associated with Kenner, and eBay and Facebook accounts in Kenner's name. The desktop computer also contained information that the computer was used to stream, download, or attempt to download numerous child pornography videos from "Ares," a peer-to-peer file sharing site. The titles of the child pornography videos described adults having sex with young children or adults teaching young children to have sex.

On March 14, 2016, a Northampton County grand jury indicted Kenner for animate object sexual penetration, aggravated sexual battery, and custodial sexual abuse. The Commonwealth filed a motion in limine asking the Circuit Court of Northampton County ("trial court") to allow it to introduce the child pornography found on the computer. The Commonwealth argued that the titles of the pornographic videos found on the computer were "so much like the facts" of the instant offense that the evidence was "highly relevant and probative" of Kenner's "attitude towards his victim," as well as his intent, plan, motive, and absence of mistake. In response, Kenner asked the trial court to deny the motion in limine and asserted that the video titles contained "a bunch of very prejudicial terms" that were "certainly more prejudicial than . . . probative" and did not "show a pattern or anything like that . . . of conduct that leads up to this." The trial court granted the Commonwealth's motion and ruled that it would allow the Commonwealth to introduce "images or evidence of child pornography" from the computer "as well as evidence that the computer had been used to download or attempt to download certain files."

Kenner requested a trial by jury which was held on June 12-13, 2017. D.T. testified at trial that Kenner had her sit on his lap in a red chair in his bedroom while he put his hands both on and inside her vagina. During the abuse, Kenner forced her to watch "sex videos" of naked adults engaging in different sex acts. D.T. testified that the videos were "on his computer. They

came from Google." D.T. also testified that Kenner had told her that when she grew up, she would be "his girlfriend." Kenner also instructed D.T. to not tell anyone that he touched her.

Dr. Alicia Meyer ("Dr. Meyer"), a licensed clinical psychologist, evaluated D.T. and testified at trial as an expert in the psychological assessment and treatment of childhood trauma. Dr. Meyer diagnosed D.T. with post-traumatic stress disorder, which she explained can occur after an individual has endured a "big stressful event," including sexual violence. D.T. told Dr. Meyer "something about a Taser, either witnessing or experiencing [Kenner] using a Taser." Dr. Meyer testified that D.T.'s symptoms directly correlated with her allegation that Kenner sexually abused her.

Dr. Michelle Clayton ("Dr. Clayton"), a child-abuse pediatrician, conducted a physical examination of D.T. Dr. Clayton testified that D.T. had "paired circular marks" on her thighs that were consistent with injuries from a Taser or stun gun.

FBI Special Agent David Desy ("Agent Desy") testified that the desktop computer found in Kenner's bedroom contained forty files of child pornography that included thirty-eight images and two videos. Over the Commonwealth's objection, the trial court refused to allow the photographs and videos to be shown to the jury. The trial court did allow the Commonwealth to introduce the titles of the files at trial.[1] The titles included: "Fuck young naked nude little girl cum," "6 year old fucked," "Toddler Fucked In Pussy," "10 yr fuck little girl," "Teaching sex to daughter," "6 years old kid how to fuck 16 year old boy," and "dad on daughter full penetration sex." Agent Desy testified that the files were downloaded, or attempted to be downloaded

---

[1] Kenner did not request a limiting instruction with respect to this evidence, and one was not given.

between November 2014 and September 2015, during the time D.T. lived with Kenner and Robinson.

At the conclusion of the Commonwealth's evidence, Kenner moved to strike the Commonwealth's evidence and the trial court denied the motion. Kenner presented testimony from several witnesses including himself. He testified that he did not know how the child pornography downloads were on the computer. He further testified that he did not know the computer's password and that it was a "public" computer in the home. Kenner denied having D.T. in his bedroom and denied touching her. Kenner instead blamed D.T.'s mother for "coaching her."

Following guilt phase deliberations, the jury found Kenner guilty on all counts. The trial court's clerk read the verdicts and asked the jury "so say you all . . . ?" to which the jurors responded affirmatively. The trial court explained that during a bifurcated criminal trial, the jury would conduct "further deliberations to determine a sentence." The jury was then excluded from the courtroom.

While the jury was excluded, the parties submitted their sentencing instructions to the trial court. The jury then returned to the courtroom. The trial court read the sentencing instructions, which included the life sentence for the animate object sexual penetration of a child under the age of 13 offense. The parties gave their arguments regarding sentencing. At the end of his argument, Kenner asked to have the jury individually polled to ensure that the guilty verdict was unanimous. The trial court denied the request.

After the jury retired to deliberate sentencing, Kenner's trial counsel offered argument to support his motion to poll the jury pursuant to Rule 3A:17(d). The trial court again denied the motion to poll the jury as untimely, finding that it was not "appropriate to wait until the jury is

4

instructed as to what the punishment is to ask that they be polled on their vote for guilt or innocence." The jury returned a sentencing verdict of life plus seven years' imprisonment.

Following the imposition of sentence by the trial court, Kenner appealed to the Court of Appeals. The Court of Appeals affirmed Kenner's convictions in a 2-1 decision. *Kenner v. Commonwealth*, 71 Va. App. 279 (2019).

A majority of the judges on the Court of Appeals' panel affirmed Kenner's convictions and disagreed with the dissenting judge's reliance on *Blaylock v. Commonwealth*, 26 Va. App. 579 (1998). The majority found that *Blaylock* did not dictate a reversal of Kenner's convictions for several reasons. First, the majority found that the ground for reversal in *Blaylock* was the exclusion of reputation evidence about the victim, a fact not at issue in this case. All other information in the opinion, as relied on by the dissent, was "non-binding dicta." *Kenner*, 71 Va. App. at 290-91. Second, the majority determined that *Moore v. Commonwealth*, 222 Va. 72 (1981) and *Ortiz v. Commonwealth*, 276 Va. 705 (2008), governed the outcome of this case. *Id*. at 291. Third, the majority found that the dicta of *Blaylock* only applied to the use of other crimes evidence as proof of intent and did not address any of the other proper uses of the evidence that applied in Kenner's case. *Id*. Finally, to the extent that *Blaylock* applied to the use of other crimes evidence as proof of intent, the majority believed that *Blaylock* was wrongly decided, was contrary to *Moore* and/or was implicitly overruled by *Ortiz*. *Id.* at 294-95.

The majority ultimately held that the evidence of the titles of the child pornography downloads was relevant and admissible and that the probative value outweighed any prejudice. "[T]he evidence was relevant to show Kenner's conduct or attitude toward D.T., to prove motive or method of committing the sexual assaults, as evidence of Kenner's specific intent to engage in sex with a minor, and to corroborate D.T.'s allegations." *Id*. at 293.

Regarding the request to poll the jury under Rule 3A:17(d), the majority held that Kenner's request was untimely because a motion to poll the jury

> must be made before the guilt phase has concluded and the sentencing phase has begun. To conclude otherwise would ignore the finality of the verdict once the sentencing phase commences and would also ignore the statutory mandate that the sentencing phase of the trial is limited to determining punishment.

*Kenner*, 71 Va. App. at 299.

The dissent agreed with the majority's decision regarding jury polling, however it concluded that the child pornography was not admissible under any of the "other crimes" exceptions. *Id*. at 300 (Malveaux, J., dissenting in part and concurring in part). The dissent argued that, as in *Blaylock*, intent was not an issue in dispute at Kenner's trial. *Id*. at 302. In the dissent's view, the only relevant question for the jury to decide was whether the acts had actually occurred. The dissent thus contended that the evidence was not relevant to prove intent, knowledge, mistake or accident, motive, or the conduct or feeling of Kenner. *Id*. at 302-03. The dissent also disagreed with the majority's conclusion that "any kind of pornography" on the computer corroborated D.T.'s testimony. *Id*. at 304. The dissent noted that D.T. had stated that Kenner showed her pornography involving adults, therefore, the evidence of child pornography should not have been admissible to corroborate D.T.'s testimony. *Id*. The dissent argued that *Ortiz* was distinguishable because there was no indication that D.T. watched the child pornography. The dissent further noted that in *Ortiz*, unlike the facts presented in *Kenner*, the evidence of pornography and a receipt for vaginal cream actually corroborated the victim's testimony.

This appeal followed.

6

## II.  ANALYSIS

### A.  Evidence

Kenner argues that he was prejudiced by the introduction of the titles of the child pornography downloads at trial.  He argues that the titles were not probative of whether he was guilty of the sexual abuse of D.T., which he denied committing during his testimony at trial.  He also asserts that the child pornography titles did not corroborate D.T.'s testimony that Kenner showed her adult pornography.  In response, the Commonwealth argues that the trial court was correct in allowing the titles of the child pornography to be admitted into evidence because it demonstrated evidence of Kenner's motive, intent, preparation, plan, knowledge, and absence of mistake or accident.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion."  *Avent v. Commonwealth*, 279 Va. 175, 197 (2010).  "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action."  *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (internal quotation marks and citations omitted).  "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions."  *Id*. at 543-44 (internal quotation marks and citations omitted).

> An abuse of discretion can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

7

*Commonwealth v. Proffitt*, 292 Va. 626, 634 (2006) (internal quotation marks and alteration omitted).

Virginia Rule of Evidence 2:401 describes "relevant evidence" as "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."

> As a general rule, evidence which shows or tends to show that the accused is guilty of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is not admissible to show the accused's commission of the particular crime charged. However, numerous exceptions to this rule authorize the admission of "bad acts" evidence. Specifically, other crimes evidence is admissible when it "shows the conduct or attitude of the accused toward his victim[;] establishes the relationship between the parties[;] or negates the possibility of accident or mistake[;]" or shows motive, method, intent, plan or scheme, or any other relevant element of the offense on trial. Evidence that falls into the enumerated exceptions must meet an additional requirement: its legitimate probative value must exceed its incidental prejudice to the defendant.

*Ortiz*, 276 Va. at 714-15 (quoting *Moore*, 222 Va. at 76). The responsibility for balancing the probative value versus the prejudicial effect rests in the sound discretion of the trial court. *Proffitt*, 292 Va. at 634.

The Court of Appeals majority relied on *Moore* and *Ortiz* in concluding that the child pornography titles were relevant evidence and were properly admitted. The dissent, on the other hand, argued that *Blaylock* applied to bar the child pornography evidence because intent was not in dispute at Kenner's trial and the evidence did not meet any of the "other crimes" exceptions.

In *Moore*, the defendant's theory of the case was that the touching of the victim was accidental or was misunderstood by the victim. We held that the evidence of a subsequent offense involving a third party was admissible to show Moore's conduct or attitude toward the victim. *Moore*, 222 Va. at 77. In *Ortiz*, the defendant insisted that he did not rape the victim and

8

that she might have had sex with him when he was asleep or drunk. The evidence he sought to exclude was a receipt for vaginal cream and pornography, however, the Court held that the evidence was admissible to corroborate the victim's statements that the defendant had put cream on her and had her watch pornography prior to the sexual abuse. *Ortiz*, 276 Va. at 716.

Here, Kenner testified on his own behalf in support of his theory of the case that he had not abused D.T. Kenner denied having D.T. in his bedroom, denied touching her, and blamed D.T.'s mother for "coaching her." He also denied knowing how the child pornography came to be on the computer, claimed that he did not know the password to the computer, and stated that it was a "public" computer in the home. Kenner urges the Court to reverse the judgment of the Court of Appeals because the Commonwealth's child pornography evidence was either (1) not relevant or (2), if it was relevant, was too prejudicial to be heard by the jury. We decline his invitation.

"Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." *Clay v. Commonwealth*, 262 Va. 253, 257 (2001). "[T]he Due Process Clause requires the prosecution to 'prove beyond a reasonable doubt every fact necessary to constitute the crime charged.'" *Hodge v. Commonwealth*, 217 Va. 338, 341 (1976) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 685 (1975)). The burden of going forward with proof "may shift from one side to the other" at trial, yet the burden to prove guilt beyond a reasonable doubt remains with the Commonwealth. *Neal v. Commonwealth*, 124 Va. 842, 848 (1919).

Code § 18.2-370.1(A) provides the elements that the Commonwealth must prove in order to obtain a conviction for custodial sexual abuse.

> Any person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with *lascivious intent*,

9

> *knowingly and intentionally* (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child; or (ii) proposes to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or (iii) exposes his or her sexual or genital parts to such child; or (iv) proposes that any such child expose his or her sexual or genital parts to such person; or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person; or (vi) sexually abuses the child as defined in subdivision 6 of § 18.2-67.10 is guilty of a Class 6 felony.

(Emphasis added.)

Therefore, in order to prove custodial sexual abuse, the Commonwealth had to present evidence that Kenner acted "with lascivious intent" and "knowingly and intentionally [felt] or handle[d] the sexual or genital parts of the child." Code § 18.2-370.1(A). The Commonwealth's evidence showed that Kenner played adult pornography on his computer while he touched D.T. in and around her genitals. D.T. also testified that Kenner told her that when she grew up, she could be his girlfriend, thus evincing his improper attitude toward the six-year-old. The titles of the child pornography found on Kenner's computer were particularly relevant to illustrate Kenner's inappropriate sexualized attitude toward children in general and toward D.T. in particular. The titles included: "Fuck young naked nude little girl cum," "6 year old fucked," "Toddler Fucked In Pussy," "10 yr fuck little girl," "Teaching sex to daughter," "6 years old kid how to fuck 16 year old boy" and "dad on daughter full penetration sex." Moreover, the titles were relevant to establishing the elements of "lascivious intent" and that the acts were accomplished "knowingly and intentionally."

As we have stated, the Commonwealth is required to prove every element of its case. *Hodge*, 217 Va. at 341; *Neal*, 124 Va. at 848. It is entitled to do so by presenting relevant evidence in support of the offense charged. The Commonwealth cannot have its evidence barred

10

or "sanitized" simply because the defendant takes the position that the offense did not occur and therefore intent is not genuinely in dispute.[2]  *See Scott v. Commonwealth*, 228 Va. 519, 526 (1984) (holding that "[w]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial").  In summary, the evidence was relevant to show Kenner's conduct or attitude towards the victim, motive, method and intent.

In addition to being relevant and material, other crimes evidence "is subject to the further requirement that the legitimate probative value of the evidence must exceed its incidental prejudice to the defendant."  *Rose v. Commonwealth*, 270 Va. 3, 11 (2005).  *Accord* Va. R. Evid. 2:404(b) (stating the requirement that "the legitimate probative value of such proof outweighs its incidental prejudice").  The responsibility for balancing the two considerations rests in the trial court's discretion and we will not disturb the trial court's determination in the absence of a clear abuse of discretion.  *Ortiz*, 276 Va. at 715; *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990). Here, the trial court balanced the probative value of the evidence against its prejudicial effect and only allowed the titles of the child pornography to be admitted into evidence.  As we said in *Ortiz*, "[a]ssuming, *arguendo*, that the pornographic material . . . do[es] constitute evidence of other crimes or bad acts under these facts, the real issue is whether evidence of [Kenner's] possession" of the child pornography videos "is relevant to prove the commission of" custodial sexual abuse.  *Ortiz*, 276 Va. at 715.  Kenner's assaults on D.T. mirrored or were closely akin to

---

[2] To the extent that the decision in *Blaylock* is inconsistent with the holding we express here, we overrule that portion of the Court of Appeals' decision.

the titles of the child pornography found on his computer.[3] Kenner told D.T. that when she grew up, she could be his girlfriend. He told her this while he sexually abused her and showed her adult pornography. The Commonwealth's evidence of the child pornography titles was relevant to show the defendant's attitude and conduct towards the victim, to prove motive or method of committing the sexual assault and served to prove elements of the offense. *Ortiz*, 276 Va. at 715; *Scott*, 228 Va. 527; *Moore*, 222 Va. at 76. Accordingly, the legitimate probative value of the evidence received by the trial court in the present case outweighed its incidental prejudice to Kenner, and the Court of Appeals did not err in finding that the evidence of child pornography was properly admitted at trial.

### B. Polling the Jury

Kenner argues that the Court of Appeals erred in affirming the trial court's denial of his motion to poll the jury because the jury had not begun its sentencing phase deliberations, and that therefore, his request was timely. The Commonwealth responds that there was no error due to the nature of the bifurcated procedure in criminal trials.

"A lower court's interpretation of the Rules of this Court, like its interpretation of a statute, presents a question of law that we review de novo." *LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012). While we have not previously had an opportunity to address this specific issue, we have a Code section, a Rule of Court, and several opinions from the Court of Appeals to guide our analysis.

Code § 19.2-295.1 provides in pertinent part that "[i]n cases of trial by jury, upon a finding that the defendant is guilty of a felony . . . *a separate proceeding* limited to the

---

[3] *Cf. Quinones v. Commonwealth*, 35 Va. App. 634, 642 (2001) (implying that the evidence is admissible if "the videotapes displayed acts . . . similar to the acts [the defendant] allegedly performed on the victim").

12

ascertainment of punishment shall be held as soon as practicable before the same jury."

(Emphasis added.) Rule 3A:17(d) provides that:

> When a verdict is returned, the jury shall be polled individually at the request of any party or upon the court's own motion. If upon the poll, all jurors do not agree, the jury may be directed to retire for further deliberations or may be discharged.

The Court of Appeals has addressed the application of Code § 19.2-295.1, specifically its use of the phrase "a separate proceeding," and Rule 3A:17(d) in several cases which we find persuasive. That court has interpreted the relevant provisions and found that the guilt phase and the sentencing phase of a jury trial are distinct. The Court of Appeals has specifically held that, "a guilty verdict becomes final when it has been ascertained by the circuit court that a jury has unanimously reached a determination of guilt and the verdict may not thereafter be disturbed, even during the punishment phase." *Tyler v Commonwealth*, 21 Va. App. 702, 706 (1996). The Court of Appeals has also addressed, in a manner that we find persuasive, the purpose for treating the two phases as separate proceedings, stating that

> [Code § 19.2-295.1] divides the trial into two distinct phases. . . . "[U]pon a finding that the defendant is guilty . . . , a *separate proceeding* limited to the ascertainment of punishment shall be held. . . ." [*Id.*] (emphasis added). The procedure assures the jury access to "information specific only to sentencing, apart from considerations of guilt or innocence."

*Daye v. Commonwealth*, 21 Va. App. 688, 691 (1996) (fourth alteration in original) (quoting *Gilliam v. Commonwealth*, 21 Va. App. 519, 525 (1996)). Indeed, the Court of Appeals has held that a bifurcated trial procedure "promotes 'a punishment appropriate to the circumstances without corrupting the initial determination of guilt or innocence with prejudice.'" *Ford v. Commonwealth*, 48 Va. App. 262, 269 (2006) (quoting *Daye*, 21 Va. App. at 691).

Reading the statute, the Rule and the persuasive rulings of the Court of Appeals together, we hold that in a bifurcated trial, for purposes of determining the timeliness of a request to poll

13

the jury, the guilt phase is a separate proceeding that ends when the jury returns its verdict of guilt or innocence. At the point during trial where the punishment phase has begun, a motion to poll the jury as to its guilty verdict generally comes too late. That is particularly true under the facts of this case. Here, the trial court had heard the guilt phase verdict by the jury and told the jury that the second, separate proceeding to determine sentencing would begin. By the time Kenner asked to have the jury polled at the end of his sentencing phase argument, the following sentencing phase procedures had already been completed: (1) selection of jury instructions; (2) introduction of two additional exhibits showing the jury Kenner's prior convictions; (3) reading of the sentencing jury instructions to the jury; and (4) delivery of closing arguments.

At the time counsel requested to poll the jury, the jury was already aware that Kenner was subject to multiple years of imprisonment for two of the offenses and a term of life imprisonment for the crime of object sexual penetration where the victim was under 13 years of age. Having heard the potential sentencing ranges for Kenner, the Commonwealth could have been prejudiced if the jury were permitted to answer a poll relating to the guilt phase.

In addressing the appropriate time to poll the jury the plain language of Rule 3A:17 states only that it may be done "when a verdict is returned." Construing this language in the context of a bifurcated trial proceeding, the request to poll the jury should occur directly after the verdict for which counsel wants the jury to be polled. As the guilty verdict had already been announced and the sentencing phase of the trial was well underway, since all that was left to do was for the jury to deliberate and determine sentencing, the trial court did not err in denying Kenner's request to poll the jury as to guilt or innocence. Accordingly, the Court of Appeals did not err in affirming the judgment of the trial court.

14

## III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the Court of Appeals and Kenner's convictions.

*Affirmed.*